IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BROTHERHOOD MUTUAL INSURANCE
COMPANY,

Plaintiff,

v.                                                          Case No. 16-1362-JTM

M.M., *a minor by and through his natural*
*mother,* T.C.;  J.J., *a minor by and through*
*his natural mother,* A.K.; A.K.;
COMMUNITY CHRISTIAN CHURCH;
STEVEN BUTLER; RAY BARNHART;
ALAN CONRADY; MIKE EDDINGTON;
WILLIARD BRIGHT; BENNY DARBRO;
JIM AIKEN; BRIAN LESTER; LARRY
MCHUGH; and DALE MEADOWS,

Defendants.

## MEMORANDUM AND ORDER

Brotherhood Mutual Insurance Company ("Brotherhood") seeks a determination

of its liability under insurance policies it issued to Community Christian Church of

Independence, Kansas (hereinafter "Community Christian" or "the church"). In two

related lawsuits filed in state court, minors M.M. and J.J. claimed they were sexually

abused by Steven Butler, a pastor at Community Christian, and they sought damages

from Butler, the church, and, in J.J.'s case, from a group of individuals identified as

church elders. Brotherhood contends its coverage for these claims is capped by a

$300,000 limit in a Sexual Acts Endorsement, and that its duty to defend the church and

the elders terminated upon Brotherhood's payment of $300,000. The defendants, on the

other hand, contend Brotherhood's coverage is subject to a $1,000,000 limit, and that Brotherhood's duty to defend is ongoing.

The matter is now before the court on cross-motions for summary judgment. The court also has before it Brotherhood's motion for default judgment against Steven Butler.

Although oral argument was requested in this case, the issues presented are questions of law concerning construction of an insurance contract and the court concludes that oral argument would not assist in deciding the issues presented.

## I. Uncontroverted Facts

Community Christian Church hired Steven Butler as a pastor in 2004. In 2012, defendant M.M., a minor, alleged in a state-court lawsuit that Butler sexually abused him from 2006 to 2010 while Butler was a pastor at Community Christian. M.M. asserted claims against Butler and against Community Christian, including: Count I – battery against Butler; Count II – intentional infliction of emotional distress against Butler; Count III – negligent infliction of emotional distress against Community Christian (including allegations that the church, through its elders, authorized or ratified Butler's conduct and knew or should have known he was engaging in inappropriate conduct with minors); Count IV – negligent supervision against the church; and Count V – negligent hiring and retention against the church.

Defendant J.J., a minor, and his mother A.K., filed a similar suit in state court in 2016 against Butler, Community Christian, and a group of individuals identified as church elders. J.J. alleged sexual abuse by Butler from approximately 2006 to 2010. The

claims in that suit included: Count I – battery/sexual abuse against Butler; Count II – defamation against Butler, the church, and the elders, based on allegations that after J.J.'s mother reported the abuse to the church, Butler spoke from the pulpit to the congregation and claimed that J.J. and his mother were "liars" and were trying to obtain financial gain; Count III – negligent supervision against the church and the elders for failing to supervise Butler; Count IV – negligent supervision against the church and elders for failing to supervise minor parishioners; Count V – negligent infliction of emotional distress; Count VI – negligent false detention or imprisonment, based upon allegations that during one incident Butler locked a door and would not allow J.J. to leave or J.J.'s mother to enter. The last incidents of sexual abuse alleged by J.J. and M.M. occurred in 2009 or early 2010.

Butler was criminally charged with sexually molesting M.M. and J.J. in *State v. Butler*, Case No. 12-CR-1961, in Montgomery County, Kansas. A jury convicted Butler of aggravated criminal sodomy of J.J., but acquitted him of criminal charges with respect to M.M. Butler received a life sentence without the possibility of parole until after 25 years. The Kansas Court of Appeals affirmed Butler's conviction. *State v. Butler*, No. 112,723, 2016 WL 1614167, 369 P.3d 341 (Table) (Kan. App. 2016).

Brotherhood is defending Butler, Community Christian, and the elders in the underlying civil lawsuits.

*The Interpleader Action*

Brotherhood filed an interpleader action in the District Court of Crawford County, Kansas, No. 2016-CV-000101-P, through which it paid $300,000 under the

3

Sexual Acts Endorsement in the 2007-2010 policy. The $300,000 has been distributed to M.M., J.J., and A.K., pursuant to an order of the Crawford County District Court.

*The Policies*

Brotherhood issued two policies to Community Christian. The first policy was effective from December 24, 2004, to December 24, 2007. The second policy was effective from December 24, 2007, to December 24, 2010. Both policies were numbered 15M5A0289744.

Each policy provides commercial liability coverage under form GL-100, for a General Occurrence Limit of $1,000,000, and a General Aggregate Limit of $6,000,000. The policies also provide additional coverage under BGL-63, BGL-81, and BGL-65 for Counseling Acts, Directors & Officers coverage, and Religious Communication, in the same amounts as the commercial liability. The policies also provide additional coverage through a Sexual Acts Endorsement under form BGL-61, which is subject to a $300,000 coverage limit, and a $300,000 coverage aggregate limit.

The declarations page states that the coverages listed are subject to the terms of the designated coverage forms. It states that only one liability coverage and one medical coverage will apply to an occurrence and any related loss. It states that any limit which is specifically stated within a coverage form or endorsement is the most that Brotherhood will pay for the coverage to which such limits applies, and it refers to BGL-11 for application of limits.

*Form GL-100 Commercial Liability Coverage Form*

The policies include form GL-100, which sets forth terms and conditions for general liability coverage. Under "Principal Coverage L – Bodily Injury/Property Damage," Brotherhood promised to pay all sums which the insured becomes legally obligated to pay as damages due to bodily injury to which the insurance applies. The bodily injury must have resulted from an occurrence, which according to the policy means an accident and includes repeated exposure to similar conditions.  The policy defined bodily injury to mean bodily harm, sickness or disease sustained by a person, but not mental or emotional injury, suffering, or distress that does not result from a physical injury.

The policy defined **insured** (in part) to mean "you and all of your executive officers and directors, but only while acting within the scope of their duties…." The term also included "**your employees**, for acts within the scope of their employment by **you** …."

Form GL-100 provides, under a Section titled "How Much We Pay," that the "**limits**, shown on the **declarations** … are the most **we** pay regardless of the number of: a. **Insureds** under the Commercial Liability Coverage; b. persons … who sustain injury or damage; or c. claims made or suits brought." It provides that the "Each Occurrence Limit" is the most Brotherhood will pay for the total of damages under Coverages L, N, and O, and medical expenses under Coverage M, due to bodily injury arising out of a single occurrence.

Form GL-100 contains a condition entitled "Separate Insureds," which states that coverage under Commercial Liability Coverage applies separately to each insured against whom a claim is made, and that this does not affect the limits stated in the policy.

Form GL-100 includes the following concerning Brotherhood's duty to provide a defense:

DEFENSE COVERAGE

Payments under this coverage are in addition to the limits for the Commercial Liability Coverage.

1.    **We** have the right and duty to defend a suit seeking **damages** which may be covered under the Commercial Liability Coverage. **We** may make investigations and settle claims or suits we decide are appropriate.

* * *

2.    **We** do not have to provide defense after we have paid an amount equal to the **limit** as the result of:

a. a judgment; or
b. a written settlement agreed to by **us**.

*Liability and Medical Coverage Form (BGL-11)*

The policies include form BGL-11, which is captioned "Liability and Medical Coverage Form," and which provides additional definitions, terms, and exclusions. It further provides that all provisions of the GL-100 and any "Liability Coverage Endorsements … (BGL Forms)" are subject to the terms of the BGL-11 form, and that in the case of any conflicting terms, the BGL-11 form will control.

BGL-11 includes the following[1] definitions:

**Emotional injury** means mental or emotional injury, suffering or distress sustained by a person other than as a result of physical injury. It does not include bodily injury or personal injury.

**Loss** means specified **bodily injury, emotional injury,** or **personal injury.**

**Personal injury** means injury arising out of one or more of the following offenses: oral publication of material that slanders or libels a person or that violates a person's right of privacy, or false arrest. It does not include bodily injury or emotional injury, "nor any injury arising directly or indirectly out of or in connection with any **sexual act** [or] **counseling act**...."

**Related loss** means a loss of any kind arising directly or indirectly out of the same occurrence, or out of the same or related acts, errors, omissions, decisions, incidents, events, or breaches of duty.

**Sexual act** means any act that would be considered a criminal act under any law relating to sexual offenses; any actual or attempted touching of a person or other act by another for the purpose of obtaining sexual gratification; any conduct interpreted as sexual harassment; and any conduct interpreted as being sexual in nature. Any such act will be considered a single sexual act if undertaken by the same perpetrator, even if such acts are directed against more than one person, happen over time, or take place during more than one policy period.

---

[1] The definitions below have been edited from the originals to eliminate certain irrelevant matters. Terms appearing in bold indicate that the term was specifically defined in the policy.

BGL-11 states that the granting of the Principal Coverages (including Coverage L) in GL-100 will not act to increase the limits stated for any Additional Coverages, and only a single Liability Coverage and Medical Coverage will apply to any one occurrence and any related loss.

BGL-11 states that the granting of the Additional Coverages in any Liability Coverage Endorsement (as provided in a BGL form) will not act to increase the limits stated for any Principal Coverage, and only a single Liability Coverage and Medical Coverage will apply to any one occurrence and any related loss.

BGL-11 contains several exclusions, including one for loss of any kind "expected by, directed by, or intended by any **insured** or by any **covered person**," or "that is the result of intentional and malicious acts of any **insured** or any **covered person**."[2]  BGL-11 contains a list of additional exclusions, including the following:

> **ADDITIONAL EXCLUSIONS THAT APPLY TO ALL COVERAGES**
> We do not pay for loss of any kind if one or more of the following excluded causes or events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded cause or event.  * * *
>
> 14.    We do not pay for loss of any kind arising directly or indirectly out of or in connection with any actual or alleged **sexual act**. (But if "Sexual Acts Coverage" is properly shown as an Additional Coverage on the Declarations, then we will provide the coverage afforded in the applicable Sexual Acts Liability Endorsement, but strictly subject to the **terms** and **limits** of such Sexual Acts Coverage.)

---

[2] The 2007-2010 policy changed the latter clause to exclude loss that is the result "of any willful, wanton or malicious act of any insured or any covered person."

*Church Organization Additional Coverage Endorsement*

The policies include form BGL-51, entitled Church Organization Additional Coverage. This endorsement provides that it is subject to the terms of GL-100 and BGL-11, and that "[o]nly one Liability coverage (Principal, Supplemental or Additional) will apply to an **occurrence** and any **related loss.**" In it, Brotherhood promises to pay sums that the church, or its leaders or employees, become legally obligated to pay as damages due to **personal injury** to which this coverage applies. The event causing the injury must arise out of the religious operations of the organization and must take place in the coverage territory during the policy period. The coverage does not apply to oral or written publication of material done by an employee who publishes the material knowing it is false.

The Church Organization Endorsement also promises, under Membership Emotional Injury Liability Coverage, to pay all sums that the church or its leaders become legally obligated to pay as damages due to **emotional injury** to which the coverage applies. The coverage does not apply, however, if the emotional injury "arises out of any … **sexual act**" or out of "the actual, threatened or alleged touching of … one or more persons by another person." The endorsement further incorporates the exclusions of GL-100 and BGL-11, and states that "[w]e do not pay for any loss arising directly or indirectly out of or in connection with any … **sexual act** or **counseling act.**"

*Religious Communication and Religious Activity Liability Coverage Endorsement*

The policies include form BGL-65, which provides certain coverage for religious communications and activities. The endorsement is subject to the terms of GL-100 and

BGL-11, and provides that "[o]nly one liability coverage (Principal, Supplemental, or Additional) will apply to an **occurrence** and any **related loss**." The endorsement provides that Brotherhood will pay all sums that a covered person becomes legally obligated to pay as damages due to emotional injury to which the coverage applies. The coverage applies to emotional injury arising out of the church's "religious communication," which is defined to include "a religious message, sermon, … or other oral or written communication containing any religious or spiritual content that is conveyed to three or more persons." It also provides similar coverage for emotional injury arising out of "religious activity," defined in part as "an act or expression undertaken in accordance with, and in furtherance of, the spiritual or religious beliefs of your organization."

The endorsement contains exclusions for loss arising directly or indirectly out of any sexual act or out of the actual, threatened, or alleged uninvited touching of one or more persons by another. It also excludes **emotional injury** arising directly or indirectly out of any libel, slander, invasion of privacy or other **personal injury**, or arising directly or indirectly out of any nursery or child care activity.

*Sexual Acts Liability Coverage Endorsement*

The policies include form BGL-61, entitled "Sexual Acts Liability Coverage." This endorsement provides that it is subject to the terms of GL-100 and BGL-11, and that "[o]nly one Liability coverage will apply to a **sexual act** (including any error in reporting such act) and any **related loss**."

The endorsement promises that Brotherhood will pay all sums which a covered person becomes legally obligated to pay as damages due to **bodily injury, personal injury or emotional injury**" to which the coverage applies. The coverage applies if the event or events causing bodily injury or emotional injury arose out of the insured's operation, and if the event or events causing personal injury resulted directly from a sexual act arising out of the insured's operation.

The endorsement contains an exclusion stating that Brotherhood will not pay for loss of any person who participates in or directs any sexual act or who knowingly allows it to occur.

The endorsement also provides in part that Brotherhood will provide the alleged perpetrator with limited defense coverage up to the point the person pleads guilty or no contest or is criminally convicted, or until a verdict relating to the sexual act is rendered against the person in a civil court.

The Sexual Acts Endorsement contains a section entitled "How Much We Pay." It provides that, except as modified, the "How Much We Pay" provisions from BGL-11 apply to each of the Additional Coverages provided by this endorsement. The endorsement lists the following modifications:

1.  The Coverage Limit shown in the Declarations for Sexual Acts coverage, subject to the General Occurrence Limit, the Coverage Aggregate Limit and the General Aggregate Limit, is the most we will pay for all losses sustained by one or more persons arising out of any **sexual act** (or error in reporting such act) to which the Additional Coverages of this endorsement apply. This Coverage Limit is the most we will pay regardless of:

11

a. The number of persons or entities to whom this policy provides coverage; or

b. the number of **losses** or **related losses** arising directly or indirectly out of one or more related acts, errors, omissions, decisions, incidents, events or breaches of duty; or

c. the number of persons acted upon, or who otherwise sustain injury, damage or loss; or

d. the number of claims made or suits brought, or the number of persons initiating such claims or suits; or

e. the number of **sexual acts** or other acts, errors, omissions, decisions, events or breaches of duty contributing to the injury, damage, or loss; or

f. the extent or duration of the injury, **loss** or **related loss**; or

g. the extent, duration or amount of sexual activity or the number of acts, errors, omissions, decisions, incidents, events, or breaches of duty contributing to injury, damage or **loss**; or

h. the number of **our policy periods**, or portions thereof, over which any acts, errors, omissions, decisions, incidents, events, or breaches of duty contributing to injury, damage or **loss** should occur, or which the injury, **loss**, or **related loss** should occur.

2. The Coverage Aggregate Limit shown in the **Declarations** for Sexual Acts coverage, subject to the General Aggregate Limit, is the most **we** will pay under the Additional Coverages of this endorsement for all **sexual acts** (including any error in reporting such acts) taking place during the period to which the Coverage Aggregate limit applies ….

3. If a **sexual act** to which any Liability Coverage of this policy applies consists of sexual activity or behavior occurring on more than one date during any **policy period** or **policy periods**, such activity or behavior, together with any **related loss**, will constitute a single **sexual act**, and the date of such act will be considered to be the earlier of:

12

A. The date on which the last alleged **sexual act** out of which the claim arises should occur; or

B. The last day that we provided any coverage to you for such act.

The policy forms, endorsements and **limits** in effect on such date will govern coverage with respect to all claims arising directly or indirectly out of the **sexual act**.

## II. Summary of Arguments

Brotherhood argues that coverage for all claims in the underlying lawsuits is capped by the $300,000 limit in the Sexual Acts Endorsement of the 2007-1010 policy. Dkt. 32. It argues the claims are otherwise excluded from coverage (among other reasons) by form BGL-11, which excludes loss that arises "directly or indirectly out of or in connection with" a sexual act, and "regardless of other causes or events that contribute or aggravate" the loss. *Citing inter alia First Fin. Ins. co. v. Bugg*, 265 Kan. 690, 962 P.2d 515 (1988). Brotherhood also argues it has no further obligation to defend or indemnify the insureds because it has paid the applicable limit of $300,000.

Defendants A.K., J.J. and M.M. contend the sexual acts exclusion in BGL-11 does not exclude claims against the church and elders for various acts of negligence.[3] They argue the exclusion applies only "to damages arising out of the sexual act itself." Dkt. 27 at 12; Dkt. 30 at 9-10. They argue Kansas follows a minority view of the "arising out of" language relied on by Brotherhood, under which Kansas recognizes that negligent hiring, retention, and supervision (and similar claims) are theories separate and distinct

---

[3] Defendants A.K. and J.J. acknowledge that the policies do not provide coverage for defendant Butler with respect to the claims against him for sexual abuse. Dkt. 27 at 11.

from the underlying tort or wrongful act of an employee, such that they that must be specifically mentioned to be excluded in these circumstances. *Citing inter alia Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 961 P.2d 1213 (1998). Defendants argue that cases such as *Cont'l Cas. Co. v. Multiservice Corp.*, No. 06-2256-CM, 2009 WL 1788422 (D. Kan., June 23, 2009) show that in Kansas, it is the theory of liability, not the cause of injury, that governs the coverage issue. Dkt. 36 at 6. They further argue the Sexual Acts Liability Endorsement, by its own terms, provides "additional coverage" to that provided by CGL-10, so the $300,000 limit does not apply to coverage under GL-100, which has a $1,000,000 limit. Finally, A.K. and J.J. argue that the policies provide coverage for their defamation claim even if the court applies a broad view of the "arising out of" language, because that claim is independent of the alleged sexual acts.

The church and its elders join in these arguments and additionally contend Brotherhood's duty to defend was not terminated by its payment of $300,000. They contend coverage is not limited to $300,000, for the reasons set forth above. Moreover, they argue the duty to defend does not end under the policy until Brotherhood has paid the limit as a result of a judgment or settlement, and point out there has been no judgment or settlement in the underlying suits. Dkt. 38 at 3.

### III. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury

to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### IV. Discussion

A. <u>Construction of Insurance Contracts under Kansas law</u>. If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense. *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 111, 73 P.3d 120 (2003). The court's function in such a circumstance is to enforce the contract as made. *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659-60, 810 P.2d 283 (1991). When the terms are ambiguous, however, the construction most favorable to the insured must prevail, because the insurer prepares its own contracts and has a duty to make the meaning clear. *Id.* A policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. *Marshall*, 276 Kan. at 111. The court must not consider what the insurer intends the language to mean, but what a reasonably prudent insured would understand it to mean. *Id.*

Exceptions, limitations, and exclusions are generally construed narrowly. "To restrict or limit coverage, an insurer must use clear and unambiguous language. Otherwise, the insurance policy will be construed in favor of the insured." *Id*. at 112 (*citing Marquis*, 265 Kan. at 327).

B. The Sexual Act Exclusion in Form BGL-11. Through Form BGL-11, the policy excludes "loss of any kind arising directly or indirectly out of or in connection with any actual or alleged sexual act," and does so "regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded caused or event." This exclusion applies except to the extent coverage is granted under the Sexual Acts Endorsement.

The court finds this language unambiguously and clearly precludes coverage for claims that the church or its elders caused or contributed to the alleged sexual abuse of M.M. and J.J. by negligently hiring, retaining, or failing to supervise Butler. The same is true with respect to claims that the sexual abuse was caused by the church's or elders' failure to supervise children in their care. All of these claims assert that sexual acts caused M.M. or J.J. to suffer loss and that unreasonable omissions or acts by the church and elders caused or contributed to the loss. Such claims are clearly and unambiguously excluded from coverage by the language of the exclusion. These claims indisputably arise out of or in connection with a sexual act, and are premised on allegations that other causes (i.e. negligence by the church and elders) contributed to or produced the loss.

Defendants contend the exclusion does not apply because Kansas determines coverage from the theory of liability asserted, not from the cause of an injury. For example, they cite *Upland Mut. Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), where the court held an exclusion for liability arising from "operation or use of an automobile" did not preclude coverage of a claim that the insured negligently entrusted an automobile to a reckless driver. The court said the action "was not based upon the … operation [or] use … of … automobiles, even though the immediate cause of the injury and death was [the driver's] operation of the automobile." Rather, "the basis of the … action was the alleged negligence of the [insured] in knowingly entrusting an automobile to a … reckless driver," so the theory of damage "is not directly related to the … operation [or] use of the vehicle." *Id*. at 150.

Defendants cite *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456 (1992), in which the court addressed an exclusion for property damage caused intentionally by an insured. In that case, a minor child intentionally caused property damage, prompting a claim against the child's parents for negligent supervision. Both the child and the parents were insureds under the policy. In finding the parents were entitled to coverage, the court said "Kansas does not look to the underlying cause of the injury to determine coverage, but to the specific theory of liability alleged." *Id*. at 697. The court also noted that a "severability clause" said the policy would be applied separately to each insured, and such a provision "requires that policy exclusions are to be applied only against the insured for whom coverage is sought." *Id*. at 698. These provisions together rendered the policy ambiguous, the court concluded, because they

17

did not make clear that the intentional act exclusion would apply to the parents if they were accused only of negligence. *Id*.

Defendants also cite *Marquis*, 265 Kan. 317, 961 P.2d 1213 (1998), where the plaintiff was injured in a car wreck and sued the other driver's employer. The employer's policy excluded coverage for an injury "arising out of … the use or entrustment … of any … auto." By a 4-3 vote, the Kansas Supreme Court held this was ambiguous as to whether it excluded claims against the employer for negligent hiring, retention, and supervision of the driver. The Supreme Court acknowledged that *Upland* represents a minority rule, but reiterated that "Kansas does not look to the underlying cause of the injury to determine coverage, but to the specific theory of liability." *Marquis*, 265 Kan. at 331 (quoting *Catholic Diocese of Dodge City*, 251 Kan. at 697). Therefore, "[t]heories of negligent supervision or control and negligent hiring or negligent retention of employees are separate and distinct from theories of liability of negligent entrustment." *Id*.

More recently, in *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 89 P.3d 573 (2004), the Kansas Supreme Court decided not to overrule *Marquis*, citing considerations of *stare decisis* and observing that "[f]or many years the law in Kansas has been clearly that an insurance exclusion for damage or injury arising from an automobile will not exclude a claim based upon negligent supervision." *Id*. at 715.  *See also Continental Cas. Co. v. MultiService Corp.*, No 06-2256-CM, 2009 WL 1788422 (D. Kan. June 23, 2009) (relying on *Upland* to find that an exclusion of claims arising out of or "in any way involving" antitrust laws did not apply to a claim for tortious interference with business relations;

noting the latter claim was independent and did not require proof of an antitrust violation).

The court finds the foregoing cases distinguishable because of the particular language of the Brotherhood policy. The Brotherhood exclusion refers not only to loss arising directly or indirectly out of a sexual act, or in connection with a sexual act, but also makes clear the exclusion applies notwithstanding "other *causes* or events that contribute to or aggravate the loss"(emphasis added), whether such causes occur before, during, or after the sexual act. The exclusion thus rules out coverage for claims that other causes produced or contributed to the loss from a sexual act.  See Dkt. 32-3 at 120 ("We do not pay for **loss** of any kind if one or more of the following excluded causes or events apply to the **loss**, regardless of other causes or events that contribute to … the **loss**, whether such causes or events act to produce the **loss** before, at the same time as, or after the excluded cause or event."). These terms would clearly indicate to a reasonable insured that a claim that the church caused or produced loss from a sexual act by negligently hiring or supervising an employee falls within the exclusion.

Where the policy itself limits coverage by reference to the *cause* of the loss, the court cannot rewrite the policy by invoking a rule of law that "Kansas does not look to the underlying cause of the injury" to determine coverage. The cardinal rule of interpretation is that "if the policy language is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used." *Warner v. Stove*, 283 Kan. 453, 456, 153 P.3d 1245 (2007). Even construing the terms of this exclusion narrowly, the plain import is that a claim

19

that the church's negligence contributed to the loss from a sexual act is one "arising directly or indirectly out of or in connection with any actual or alleged sexual act," notwithstanding that "other causes" before the event — i.e. negligence — allegedly produced or contributed to the loss. *Cf. First Fin. Ins. Co. v. Bugg*, 265 Kan. 690, 962 P.2d 515 (1998) (exclusion for loss "arising out of assault or battery" precluded claim that bar owner's negligence caused or contributed to injury from an assault).

Count I and II of M.M.'s complaint assert claims against Butler for battery and intentional infliction of emotional distress. (Dkt. 32-1). These claims are barred by the sexual acts exclusion, as they are arise out of sexual acts as defined by the policy. *See* Dkt. 32-1 at 4 (alleging Butler acted "with intent to make physical contact … for purposes of his own sexual gratification" and that he engaged in "sexual harassment" and "sexual abuse"). Coverage for these claims, insofar as Butler is concerned, is also excluded by the intentional/willful act exclusion of the policy. Count III alleges that the church and its elders negligently inflicted emotional distress upon M.M. through various actions, including by failing to supervise Butler and failing to safeguard minors in the church's care. Count IV makes similar allegations in support of a claim against the church for negligent supervision. Count V alleges negligent hiring and retention by the church, which allegedly "caused [M.M.] to suffer injuries as set forth" — i.e., injuries resulting from sexual acts. All of these claims "arise out of or in connection with" sexual acts, as Butler's alleged sexual abuse is alleged to have been a product of the church's and elders' negligence. The same conclusion applies with respect to similar claims by J.J., including Count I (sexual abuse and battery), Count III (negligent supervision of

pastor), Count IV (negligent supervision of children), Count V (negligent infliction of emotional distress); and Count VI (negligent false detention or imprisonment).

The court finds that J.J.'s and A.K.'s claim for defamation in Count II stands on a different footing. The gravamen of this claim is that the claimants suffered damage to their reputation caused by Butler making false statements from the pulpit to the congregation. *See Hall v. Kansas Farm Bureau*, 274 Kan. 263, 50 P.3d 495 (2002) (elements of defamation are false and defamatory words, communicated to a third person, which result in harm to the reputation of the person defamed). There is no allegation that this tortious act caused or contributed to J.J.'s loss from a sexual act. The injury from Butler's alleged sexual acts was complete and actionable by the time Butler decided to address defendants' credibility and motives in a sermon. Like the tortious interference claim in *Continental Cas. Co., supra*, this claim is reasonably regarded as being independent of the underlying excluded event. *Cf. Continental Cas. Co.*, 2009 Wl 1788422, *4 ("Each claim has its own, distinct elements.").

Barring a claim for personal injury that "arises out of" or "in connection with" a sexual act suggests that there must be some causal connection between the two, but the exclusion does not explain what that connection must be. The terms can reasonably be construed as allowing coverage for an act of defamation if it causes a loss that is separate and distinct from the claimed loss from a sexual act. The fact that the subject of the defamatory statements in this case included the reported sexual acts, meaning the claimants might have to prove Butler's statements about the sexual acts were false, does not necessarily make this claim one for loss "arising out of" or "in connection with" a

sexual act. The loss from the alleged sexual acts is logically and legally distinct from loss caused by Butler by defaming the defendants in a sermon. The alleged loss from the defamation occurred separately, independently and remotely from the alleged sexual acts, and allegedly caused harm to defendants' reputation and standing that was not caused by the sexual acts. If Brotherhood intended to exclude such an apparently independent claim from coverage, it was obligated to do so more clearly than by ambiguously excluding claims "arising out of" or "in connection with" a sexual act. The court concludes this claim is not unambiguously excluded by the sexual acts exclusion.

The court also concludes J.J. and A.K. have met their burden to show that the defamation claim is covered under the Personal Injury liability component of the Church Organization additional coverage. This coverage provides in part that Brotherhood will pay all sums that the church, its leaders, or its employees "become legally obligated to pay as **damages** due to **personal injury** to which this coverage applies." To be covered, the events causing injury "must arise out of the religious … operations" of the church. The policy defines "personal injury" to mean injury arising out of "oral or written publication of material that slanders or libels a person … or that violates a person's right of privacy," but it does not include "injury arising directly or indirectly out of or in connection with any sexual act." Dkt. 32-4 at 146.

Brotherhood again argues the sexual acts exclusion in BGL-11 (including the above definition of personal injury) bars the claim. Dkt. 32 at 46-47. For the reasons indicated above, however, the court finds the exclusion does not bar this claim in clear and unambiguous terms. Brotherhood also argues the claim is not covered because the

policy states that personal injury "does not include 'bodily injury,' 'property damage,' 'emotional injury,' or 'financial damage' of any kind." *Id*. at 46. But Brotherhood does not explain what "personal injury" does cover, and the coverage for injury from a libel presumably covers something —such as injury to reputation. In sum, the court finds J.J.'s and A.K.'s claim for defamation against the church and/or the elders may be covered by the policy's Personal Injury Liability Additional Coverage for Church Organizations, and is subject to a $1,000,000 coverage limit.

C. <u>Duty to Defend.</u>

Brotherhood argues its duty to defend ended with its payment of $300,000 under the policy's Sexual Acts Coverage, because Brotherhood "has exhausted all available coverage available for the claims in the Underlying Lawsuits." Dkt. 32 at 54. The court rejects that argument with respect to the claims by J.J. and A.K., as the court has now determined that the defamation claim by these defendants is subject to coverage under the Church Organization coverage for personal injury liability, and is subject to a $1,000,000 coverage limit. Moreover, for the reasons set forth below, the court rejects Brotherhood's argument that its duty to defend has terminated with respect to M.M.'s claims against the church and elders.

Under Kansas law, an insurer generally has a duty to defend whenever there is a potential of liability under the policy. *MGM, Inc. v. Liberty Mut. Ins. Co.*, 253 Kan. 198, 202, 855 P.2d 77 (1993) (*citing Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973)). In this instance, Brotherhood affirmatively promised to defend any suit seeking damage which may be covered under the commercial liability

policy. Dkt. 32-4 at 85. In BGL-11 it promised to provide the same defense coverage with respect to additional liability coverages. The GL-100 provision stated that Brotherhood does not have to provide a defense "after **we** have paid an amount equal to the **limit** as the result of: a. a judgment; or b. a written settlement agreed to by **us**." *Id.*

The court agrees with defendants that a reasonable construction of the latter two clauses is that Brotherhood is only relieved of its duty to defend when the payment of the applicable limit results from resolution of claims either through judgment or settlement. Otherwise, the latter half of the clause would be superfluous. It specifies that the duty to defend ends when the limit is paid *as a result of a judgment or settlement.* Brotherhood has not paid its limit as a result of a judgment or settlement of the underlying litigation, and its duty to defend is therefore ongoing.  *See e.g., Conway v. Country Cas. Ins. Co.*, 92 Ill.2d 388, 442 N,E,2d 245 (Ill. 1982) ("Our holding that an insurer cannot discharge its duty to its insured simply by making payments to the claimant to the extent of its policy's limits is clearly supported by the language of the policy here. [T]he policy provided that the insurer could terminate its obligation to defend … by payments to the policy's limits of 'any judgments or settlements.' The insurer here … made no payment pursuant to a judgment or settlement agreement."); *Samply v. Integrity Ins. Co.*, 476 So.2d 79, 83-84 (Ala. 1985) (an insurer "cannot avoid its duty to defend against an insured's contingent liability by tendering the amount of its policy limits into court without effectuating a settlement or obtaining the consent of the insured"); *Couch on Insurance* § 200:50 (3rd ed.) ("Generally, without settlement or the insured's consent, an insurer cannot avoid its duty to defend by simply tendering

payment"); 1 Allan. D. Windt, *Insurance Claims and Disputes* § 4:32 (6th ed.) ("A duty to defend provision can be expressly made to end when the policy limits are reached. [footnote omitted] If it is not so limited, resulting in doubt, such doubt should be resolved against the insurer."). Brotherhood is therefore still obligated to provide a defense to the church and the elders in the two underlying cases.

### V. Motion for Default Judgment (Dkt. 33)

Brotherhood moves for default judgment against defendant Steven Butler, who was served with the complaint but who has not answered or otherwise defended the action. The clerk entered default against Butler on November 21, 2016. (Dkt. 11). Butler has not appeared or filed a response to the motion for default judgment.

Defendants J.J. and A.K. oppose the motion, arguing it is procedurally improper because Brotherhood invokes Rule 56 as well as Rule 55 in its motion. Defendants specifically object "[t]o the extent that entry of Default Judgment against Defendant Steven Butler affects Brotherhood's duty to provide indemnification for claims asserted in the underlying lawsuits…." Dkt. 37 at 3. They otherwise "take no position with respect to the relief sought by Brotherhood under Rule 55(b)(2)…." *Id.*

The court finds the motion for default judgment against Butler should be granted in part. Some of the declaratory relief requested by Brotherhood against Butler is contrary to the court's previous findings concerning coverage. *See e.g.* Dkt. 33 at 3 ("The same legal arguments set forth in Brotherhood Mutual's Memorandum in Support for Summary Judgment concerning all defendants apply to Steven Butler."). The court denies the motion for default judgment insofar as any of the relief requested is

inconsistent with the court's findings concerning Brotherhood's obligations to the church and to the elders. The court will otherwise grant the motion with respect to Brotherhood's obligations to defendant Steven Butler.

## VI. Declaratory Relief

The court declares that Brotherhood's obligations toward the defendants are as set forth in the findings of this order.

With respect to the lawsuit filed by M.M. (*Doe, et al. v. Butler, et al.*, No. 12CV-1341 (Dist. Ct. of Montgomery Co., Ks.),[4] the court determines that Brotherhood's only obligation to indemnify Independence Community Christian Church for the claims asserted therein arose under the Sexual Acts Endorsement in the 2007-2010 insurance policy, and that Brotherhood has discharged its obligation by paying the applicable $300,000 limit under that endorsement. The court determines that Brotherhood's obligation under the policy to provide a defense to Independence Community Church is ongoing, however, until entry of a judgment or a settlement consented to by the church.

With respect to the lawsuit filed by J.J. and A.K. (*Doe, et al. v. Butler, et al.*, No. 16-CV000063-P (Dist. Ct. of Crawford Co., Ks), the court determines that Brotherhood's obligation to indemnify Community Christian and the defendants identified as elders included the coverage owed under the Sexual Acts Endorsement and the Personal Injury Liability Coverage in the Church Organization Additional Coverage of the 2007-

---

[4] The case was transferred and is now Case No. 16CV000025-G in the District Court of Crawford County, Kansas.

2010 policy. The latter coverage is subject to a $1,000,000 coverage limit. The court further determines that Brotherhood's obligation to provide a defense to the church and to the elders is ongoing until entry of a judgment or settlement consented to by these defendants.

The court determines that Brotherhood has no obligation to indemnify defendant Steven Butler for any of the claims asserted in either of the two underlying lawsuits and no further obligation to provide a defense to Steven Butler in the underlying lawsuits.

**IT IS THEREFORE ORDERED** this 13th day of November, 2017, that A.K.'s Motion for Summary Judgment (Dkt. 26), T.C.'s Motion for Summary Judgment (Dkt. 29), Brotherhood's Motion for Summary Judgment (Dkt. 31), and Brotherhood's Motion for Default Judgment against Steven Butler (Dkt. 33) are all GRANTED IN PART AND DENIED IN PART as set forth in this order.

___s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE
